UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 06-101-DCR |
| | ) | Civil Action No. 6: 10-7120-DCR |
| V. | ) | |
| | ) | |
| JIMMY EARL ELLIOTT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Defendant/Petitioner Jimmy Earl Elliott's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 238] and his objections to the Magistrate Judge's Recommended Disposition on that motion. [Record No. 264] For the reasons discussed below, Elliott's objections will be overruled and his § 2255 motion will be denied.

**I.**

Elliott was charged on March 1, 2007, in six counts of a 22-count, multi-defendant superceding indictment. [Record No. 75] The grand jury charged Elliott with conspiring to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 846, distributing marijuana and methamphetamine in violation of 21 U.S.C. § 841(a)(1), possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1), and two forfeiture counts. [*Id.*]

Due to the quantity of drugs charged and his criminal history, Elliott faced a mandatory minimum term of imprisonment of twenty years if convicted. *See* 21 U.S.C. § 841(b)(1)(A). However, Elliott's attorney, David Hoskins, was able to negotiate a plea agreement with the United States that reduced Elliott's mandatory minimum of imprisonment to ten years. The government agreed that, in exchange for a guilty plea to the conspiracy, firearm, and both forfeiture counts, the United States would dismiss the other counts and would stipulate at sentencing that Elliott's relevant conduct involved less than 1,000 kilograms of marijuana. [*See* Record No. 128] Paragraph 8 of Elliott's plea agreement is particularly important to this analysis: "The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, but not the sentence." [*Id.*]

Elliott was re-arraigned on March 20, 2007. [Record No. 186] He was placed under oath and the Court informed Elliott of the weight of that oath and the importance of truthful answers. [*Id.*, p. 3] The Court confirmed that Elliott was competent to enter a plea [*id.*, pp. 3–5], that he had read and understood the terms of the plea agreement [*id.*, pp. 6–10], that the agreement was voluntary and not a result of threats or coercion [*id.*, p. 10], and that the agreement was not based on any other promises or assurances of a specific sentence [*id.*, p. 10]. The Court informed Elliott of the maximum sentence he could receive [*id.*, pp. 12–13], explained the sentencing guidelines [*id.*, p. 14–17], and discussed the scope of his waiver [*id.*, pp. 17–18]. Finally, the Court described the elements of each count that the government would have to prove beyond a reasonable doubt, specifically asked Elliott to explain what he had done to be guilty of each

count [*id.*, pp. 20–26], and accepted Elliott's guilty plea as to Counts 1, 14, and the forfeiture counts (18 and 19). [*Id.*, p. 26]

Prior to sentencing, Elliott was provided a Presentence Investigation Report ("PSR") that summarized the Probation Office's calculations as to the applicable range under the United States Sentencing Guidelines (the "Guidelines"). Because Elliott had been previously convicted of two separate felony drug offenses, the Probation Office applied the enhancement for a career criminal pursuant to § 4B1.1 of the Guidelines. United States Sentencing Commission, *Guidelines Manual*, § 4B1.1 (Nov. 2006) [hereafter, "USSG"]. Elliott objected to this enhancement, and argued that the two separately-charged drug trafficking offenses were "related cases" and should not be counted separately for purposes of the career offender enhancement. The Court overruled Elliott's objection. The Court recognized that the offenses "were close in time" and "they also involve[d] the same detective purchasing the illegal substances," but nevertheless concluded that the two offenses were not "related cases" within the meaning of the Guidelines. [Record No. 187, p. 10] As a result of the Court's ruling, Elliott was subject to a Guideline range of 262 to 327 months. The United States moved for a downward departure pursuant to § 5K1.1 of the Guidelines, which the Court granted. The Court determined that Elliott's sentence should be reduced by 60 months for substantial assistance. [*Id.*, p. 28] After beginning with a sentence at the low end of the Guidelines (262 months) the Court subtracted 60 months and imposed a term of incarceration of 202 months. The 120 month sentence on Elliott's firearm count was run concurrently, for a total term of 202 months. [*Id.*, pp. 28–29]

Elliott appealed his sentence to the United States Court of Appeals for the Sixth Circuit. *See United States v. Elliott*, 327 F. App'x 540 (6th Cir. 2009). The Sixth Circuit concluded that this court had not committed error by finding that the two underlying convictions were separate offenses. *Id.* at 548 ("The district court, therefore, properly enhanced Elliott Senior's Guidelines calculation under U.S.S.G. § 4B1.1."). The Sixth Circuit likewise disposed of Elliott's other arguments and affirmed his sentence. *Id.* at 550. Elliott petitioned the Supreme Court for a writ of certiorari, but his petition was denied. *See Elliott v. United States*, 129 S. Ct. 2850 (2009).

Elliott timely filed the instant motion, pursuant to 28 U.S.C. § 2255 on May 1, 2010. [Record No. 238] Thereafter, United States Magistrate Judge Hanly A. Ingram issued a Recommended Disposition. [Record No. 263] Magistrate Judge Ingram recommended that Elliott's motion be denied because Elliott had failed to show that his waiver was unknowing, involuntary, or the product of ineffective assistance and because the performance of Elliott's counsel at sentencing and on appeal was constitutionally effective. Elliott filed timely objections to the Magistrate Judge's Recommended Disposition on March 26, 2011. [Record No. 264] The Court reviews any part of the magistrate judge's disposition that has been properly objected to under a *de novo* standard. Fed. R. Civ. P. 72(b)(3).

**II.**

Elliott's objections fall into two categories. First, he challenges the validity of his plea agreement and the waiver contained therein. Elliott argues that because he was unaware that he would be subject to the career offender enhancement, his plea could not have been entered into knowingly, voluntarily, or intelligently. In the alternative, Elliott argues that his counsel

provided ineffective assistance because he failed to further investigate the facts of Elliott's state-court conviction and inform him, prior to pleading guilty, that he would be subject to the enhancement. Second, Elliott contends that the assistance of his trial counsel during the sentencing phase and his appellate counsel who challenged the sentence on appeal was ineffective. Elliott claims that their failure to obtain the state-court documents and provide those to the court contributed to what he believes were incorrect rulings regarding the enhancement applied. For the reasons explained below, because each of Elliott's contentions is without merit, his objections will be overruled and his § 2255 motion will be denied.

### A. The Plea Agreement and Waiver

In his plea agreement, Elliott waived the right to collaterally attack his guilty plea or conviction. [Record No. 128 ¶ 8] "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (quoting *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001) (internal quotation marks and citation omitted)). Because Elliott agreed not to collaterally attack his plea agreement, it would seem the portion of his § 2255 motion attacking the validity of his plea agreement would be foreclosed. *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (holding that when a movant has waived "the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255"). However, that is not necessarily the case. The Sixth Circuit has held that a movant may challenge the validity of the waiver itself by arguing that "his plea was not knowing or voluntary, or was the product of ineffective

assistance of counsel." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). In other words, by arguing that his plea was unknowing or based on ineffective assistance, Elliott is allowed to proceed with the very challenge he waived: a collateral attack of his plea. Therefore, in accordance with *Acosta*, the Court will first examine whether Elliott's waiver and plea were knowing, voluntary, and made with the effective assistance of counsel.

Elliott's waiver of his right to appeal and collaterally attack his plea was knowing and voluntary. It is without question that Elliott's plea was voluntary; Elliott has never argued that he was coerced or forced into waiving his rights. Elliott principally asserts that his waiver was unknowing: that because he did not know he would be sentenced as a career criminal, his waiver was not fully informed. However, Elliott's argument cuts directly against his statements in the plea proceeding. First, the Court discussed the waiver provision with Elliott and ensured he understood its terms:

> THE COURT: Your plea agreement also has some waiver language contained in it in paragraph eight. Actually, its seven and eight. But in paragraph eight, you state that you waive the right to appeal and the right to attack collaterally, or file a separate lawsuit to challenge, the guilty plea or the conviction. And you understand you're waiving those rights, correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: But you are not waiving the right to appeal your sentence and you still have that right. And you understand that?
>
> THE DEFENDANT: Yes.

[Record No. 186, p. 17]

It is clear from this exchange that Elliott understood the rights he was waiving and the effect of his waiver. The Court complied with Federal Rule of Criminal Procedure 11(b)(1)(N),

which requires that, before a guilty plea is accepted, the court must inform the defendant of, and determine that the defendant understands the terms of a waiver provision in the plea agreement. *See United States v. Mcgilvery*, 403 F.3d 361, 363 (6th Cir. 2005). Elliott was explained the nature of his waiver, and he voluntarily agreed to it.

In response, Elliott claims that his answers were uninformed because he was unaware of the potential enhancement he could receive. However, this argument is directly contradicted by the Court's follow-up questions and Elliott's answers.

> THE COURT: Now, unless waived, as I said, you would have the right to appeal your sentence to the United States Court of Appeals for the Sixth Circuit. But do you understand that you would not be able to withdraw from you plea agreement if your attorney's prediction or your belief about your guideline range were to be inaccurate? You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And if the Court were to consider one or more of those statutory factors that I have just gone through with you, that would not be grounds for withdrawing from your plea agreement. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And if the sentence that's ultimately imposed in your case would be more severe than you expect, again, you would still be bound by your plea agreement and you couldn't use that as a reason to withdraw from it. You understand that?
>
> THE DEFENDANT: Yes.

[Record No. 186, pp. 17–18]

This line of questioning can be summed up simply: Elliott understood that even a sentence greater than he expected would not be grounds to later challenge his plea or waiver. However, that is the precise argument Elliott now advances. [*See* Record No. 264, p. 2 ("Mr.

Elliott's responses to the District Court's questions pursuant to Rule 11—when Mr. Elliott was not aware of his status as a career offender and the effect that would have on his sentence—did not meet the requirements of a knowingly, voluntarily, and intelligently entered plea.")] Elliott's claim that his waiver was unknowing or involuntary is not supported by the record.

Numerous courts have held that plea agreements and waivers were knowingly and intelligently entered even when a particular defendant was unaware how severely he would be sentenced. *See, e.g.*, *United States v. Smith*, 143 F. App'x 559, 561 (5th Cir. 2005) (rejecting defendant's claim that the failure to inform him of a potential career offender enhancement rendered his plea involuntary); *United States v. Wilhite*, 929 F.2d 702 (6th Cir. 1991) ("Concerns for due process do not require that a criminal defendant be placed on advance notice of the application of a career offender sentence under Guideline 4B1.1, so long as the defendant has, as he was in the instant case, been afforded an adequate opportunity to challenge the factual basis for applying the enhancement."); *Unites States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) ("Because appellant was fully aware that his ultimate sentence under the agreement was subject to later determination by the court based on a variety of factors at the time he entered into it, the fact that he did not know specifically that he would be subject to sentencing in [a particular] range does not mean that it was entered into unknowingly and unintelligently."); *United States v. Brown*, No. 07-2309, 2010 U.S. Dist. LEXIS 76286, at *24 (W.D. Tenn. July 23, 2010) (noting that while the defendant "was not specifically advised, during the Rule 11 colloquy, about the potential for a career offender enhancements," his conviction would not have been overturned because "the presentence report afforded him reasonable notice that the judge would

be considering the enhancement, and he was afforded the opportunity to be heard on the issue"). Both the record and the applicable law compel the conclusion that Elliott's plea and waiver were knowingly and voluntarily entered.

Further, neither Elliott's plea agreement nor waiver was entered into as a result of ineffective assistance of counsel. To prove ineffective assistance of counsel, Elliott must prove two distinct elements. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Where, as here, the ineffective-assistance claim arises out of the plea process, Elliott "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A defendant has the burden of proving both of *Strickland*'s prongs. *Strickland*, 466 U.S. at 687. Ultimately, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

In the present case, Elliott has not shown any prejudice as a result of his counsel's performance in connection with his decision to plead guilty. "It is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d 1358, 1363 n. 3 (6th Cir. 1993); *see*

*also United States v. Stephens*, 906 F.2d 251, 253 (6th Cir.1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement . . . . This is especially true under the new Sentencing Guidelines."). In other words, when the District Court properly conducts a Rule 11 colloquy and informs the defendant of the maximum penalty he may receive, he simply cannot then argue that an attorney's inaccurate prediction caused prejudice. *See Gleason v. United States*, No. 08-969, 2010 U.S. Dist. LEXIS 39226, at *36–38 (S.D. Ohio Apr. 20, 2010) ("The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel.") (internal citation omitted) (citing *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir.1999) ("[A]n attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States*, 33 F.3d 1047, 1051–53 (9th Cir.1994) ("The district court informed [the defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir.1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel . . . . Further,

[defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.")).

In Elliott's case, the Court properly informed Elliott of his maximum sentence [Record No. 186, pp. 12–13] and ensured that his plea was not the result of any promises or assurances regarding his sentence range:

> THE COURT: But do you understand that until that process has taken place it would be impossible for the Court or your attorney to know exactly what your guideline range would be? You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Other than what's contained in this plea agreement, has anyone else made any promises to you in order to induce you or convince you to enter into a plea agreement?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone made any threats or in any way forced you to enter into a plea agreement?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone told you that you would receive a specific sentence in exchange for entering a plea agreement?
>
> THE DEFENDANT: No.

[*Id.*, pp. 10–12]

Despite telling the Court, under oath, that his plea was not predicated on the promise of a particular sentence, Elliott now claims that he was prejudiced by his attorney's predictions regarding his sentence range. Such a claim cannot be seriously maintained. Elliott has not

shown any prejudice resulting from his counsel's performance, and has therefore has failed to meet his burden of showing ineffective assistance of counsel. Because Elliott has failed to show that his waiver was either unknowing, involuntary, or the product of ineffective assistance, his waiver will be enforced and his collateral attack of his guilty plea is foreclosed. However, Elliott's waiver did not encompass collateral attacks of his sentence, so the portion of his § 2255 motion attacking counsel's performance at sentencing and on appeal must be addressed.

### B. Assistance of Counsel at Sentencing and on Appeal

Elliott's fourth objection relates to the performance of his counsel at sentencing and appeal. Elliott argues that his counsel was deficient in two ways: first, by failing to move to withdraw Elliott's guilty plea once he knew he would be sentenced as a career offender and second, by failing to obtain the state-court criminal history documents. Elliott believes the state-court documents would have proven that his prior convictions were, in fact, related cases. Therefore, Elliott contends that without these documents the Court made an uninformed ruling which was predicated on the ineffective assistance of counsel.

As a preliminary matter, Elliott's objection appears to generally reargue the propriety of his career offender enhancement. The Sixth Circuit has plainly stated that "a § 2255 motion may not be employed to relitigate an issue what was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)). The Court recognizes that there is a thin line between showing "prejudice" under *Strickland* and relitigating an issue, but the majority of Elliott's arguments fall on the wrong side

of that line. For example, Elliott argues that "the indictments show that the offenses were jointly planned because Mr. Elliott kept selling drugs to the same undercover officer as the officer kept on buying . . . . Again, in response to the District Court's reference to commission of one offense that led to the commission of the others—that is what exactly what happened [sic]." [Record No. 264, p. 12] The information Elliott finds persuasive, that the same officer bought the drugs in each instance, was before the Court in its original decision. [*See* Record No. 187, p. 10 (noting that the two convictions "involve[d] the same detective purchasing the illegal substances")] In other words, Elliott is arguing that the facts already contained in the record demand a different result, not that facts undiscovered by his attorney would have demanded a new result. Such an argument is inappropriate in a § 2255 motion. *See Jones*, 178 F.3d at 796.

To the extent Elliott's argument does focus on the actions of counsel, it also fails. For many of the reasons previously explained, Elliott has not shown that he was prejudiced by his counsel's failure to obtain state-court documents. First, Elliott argues counsel was deficient by not moving to withdraw the plea. However, the Court has already explained that "a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d 1358, 1363 n. 3 (6th Cir. 1993); *see also United States v. Stephens*, 906 F.2d 251, 253 (6th Cir.1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement . . . . This is especially true under the new Sentencing Guidelines."). Elliott has not shown that, even had his attorney made the motion to withdraw his plea, sufficient grounds existed to grant the motion. At best, the motion would have been

predicated on an erroneous prediction of potential sentences, which is insufficient to allow withdrawal. Consequently, Elliott's argument that his counsel was ineffective for failing to attempt to withdraw his plea is without merit.

Elliott's next contention is that his attorney was deficient for failing to provide state-court documents to the Court. Elliott believes these documents would "demonstrate that Mr. Elliott's prior offenses were 'effectively consolidated' and were therefore 'related cases.'" [Record No. 264, p. 11] However, Elliott does not provide any information that could be found in those documents that was not in the record before the Court at sentencing. As the Court has previously noted, the dates of the offenses were clarified orally [*see* Record No. 187, p. 7 ("What Mr. Hoskins says is correct. If you look at the offense conduct in paragraph 71, the offense conduct was on July 1st, 1993. That is the second date. In paragraph 72, the offense conduct is . . . June 29th.")] and were plainly stated in the PSR. [Record No. 159] The Court discussed that the two events "weren't contemporaneous, there was, some period between the two," [Record No. 187, p. 4] but was not overly concerned by the precise number of days between them.[1] All the information that Elliott claims was missed by his attorney was properly provided in the record, either in the PSR or explained at the sentencing hearing. The Court relied on much of this information in making its ruling. [*See* Record No. 187, p. 10 (recognizing that the offenses "were close in time" and "they also involve[d] the same detective purchasing the illegal

---

1       Elliott seems to be very concerned by the semantics of how many days separate June 29th and July 1st. Elliott argues that "the dates were no more than one day apart yet trial counsel states they were two or three days apart." [Record No. 264, p. 11] First, this distinction is one of form, not of substance, which was not significant to the Court's ruling. Second, Elliott is wrong. Events occurring on June 29th and July 1st are, at minimum, 24 hours and 1 minute apart and, at maximum, 72 hours apart. Under no circumstances were the events within 24 hours of one another. In other words, a characterization of the events being two to three days apart is accurate.

substances," but nevertheless concluding that the two offenses were not "related cases" within the meaning of the Guidelines)] The Sixth Circuit likewise had the entire record available to it and affirmed Elliott's sentence. *See Elliott*, 327 F. App'x at 548. Elliott has failed to show that he was prejudiced by any error of his attorneys in failing to obtain and produce state-court documents concerning his conviction. Thus, his effective-assistance challenge fails.

### C. Remaining Objections

Finally, Elliott objects to the Magistrate Judge's conclusions that no evidentiary hearing was needed and that no certificate of appealability should issue. However, the Magistrate Judge was correct in each instance. "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). In Elliott's case, the Court finds that the record conclusively shows he is not entitled to relief. Elliott's waiver and its voluntariness can easily be determined on the present record. Elliott's failure to show prejudice in his ineffective-assistance claims are likewise clear on the pleadings before the Court. Therefore, Elliott's failure to meet his burden is clear on the record and no evidentiary hearing is necessary. *See Thomas v. United States*, 27 F.3d 321, 326–27 (8th Cir. 1994) (holding that a defendant who alleged ineffective assistance of counsel due to an improper Guidelines range calculation was not entitled to an evidentiary hearing). Elliott's fifth objection will be overruled.

Additionally, no certificate of appealability should issue. Elliott has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He has not

demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The arguments presented by Elliott's motion are not "close calls." He has fallen far short of meeting the standard for relief under § 2255, and this conclusion is not reasonable debatable. Elliott's sixth objection will be overruled and the Court will not issue a certificate of appealability.

### III.

Elliott has failed to meet his burden for § 2255 relief. His waiver was knowing, voluntary, and not the result of ineffective assistance of counsel. His counsel at sentencing and on appeal was not ineffective nor did any mistakes they may have made cause prejudice. Additionally, he has not shown any error of constitutional magnitude. Accordingly, it is hereby

**ORDERED** as follows:

(1) That Petitioner/Defendant Jimmy Earl Elliott's Objections to the Magistrate Judge's Recommended Disposition [Record No. 264] are **OVERRULED**;

(2) The Magistrate Judge's Recommended Disposition [Record No. 263] is **ADOPTED** and **INCORPORATED** by reference;

(3) Elliott's Motion to Amend, Vacate, or Set Aside His Sentence, pursuant to 28 U.S.C. § 2255 [Record No. 238] is **DENIED**;

(4) A Certificate of Appealability shall not issue because Elliott has not made a substantial showing of the denial of a substantive constitutional right;

(5) This habeas proceeding is **DISMISSED** and **STRICKEN** from the docket.

This 11th day of May, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge